UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

OCT 1 6 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

NABIH BEDEWI,   )
   )
   Petitioner,   )
   )
   v.   )   Criminal Action No. 05-101 (RWR)
   )
UNITED STATES OF AMERICA,   )
   )
   Respondent.   )
   )

## MEMORANDUM OPINION

*Pro se* petitioner Nabih Bedewi has moved under 28 U.S.C.
§ 2255 to vacate his sentence, arguing that his restitution order
should be reduced because of subsequent recoveries by the victim,
that the sentence exceeds the applicable range under the
Sentencing Guidelines, and that he is entitled to leniency
because of family hardship and because of the shorter guidelines
sentencing range that was previously applicable to his offense.
The government opposes Bedewi's motion, insisting that his claims
are procedurally barred, baseless, and beyond the scope of
§ 2255.  Bedewi's § 2255 motion will be denied because Bedewi
fails to show good cause for not raising his challenges by direct
appeal, most courts bar using a § 2255 motion to challenge a
restitution order, he agreed in his binding plea agreement under
Federal Rule of Criminal Procedure 11(c)(1)(C) to the sentencing
range applied, and his plea for leniency is not a ground for
relief under § 2255.  Bedewi has also moved for leave to conduct

- 2 -

discovery related to his various challenges to his sentence under Rule 6 of the Rules Governing Section 2255 Proceedings for the United States District Courts. This motion will be denied for lack of good cause shown.

BACKGROUND

In 2005, Bedewi pled guilty to a one-count information charging him with theft concerning programs receiving federal funds in violation of 18 U.S.C. § 666(a)(1)(A). Bedewi agreed under oath to the following facts. Bedewi was a Professor at George Washington University's ("GWU's") School of Engineering and Applied Science and the Director of GWU's National Crash Analysis Center ("NCAC"), a research and resource center for transportation safety studies on vehicles and highways. NCAC received approximately 80 percent of its funding from the U.S. Department of Transportation ("DOT") through reimbursements of incurred expenses. Bedewi also acted as the principal investigator on NCAC's cooperative agreements with DOT and was responsible for requesting and approving research, work orders, and equipment purchases. Although Bedewi was prohibited from owning and controlling NCAC subcontractors and vendors and from expending NCAC funds to such entities, he actually owned and controlled International Transportation Safety Corporation ("ITSC") and EBI, Inc. and had an ownership interest in New Generation Motors Corporation ("NGM") -- all subcontractors or

- 3 -

vendors of the NCAC.  Bedewi caused (1) the NCAC to pay
fraudulently inflated invoices from ITSC, EBI, and NGM; (2) two
unauthorized graduate student stipends to be set up for a family
member and the spouse of an NGM employee based on false
representations that they would be working on NCAC projects; and
(3) an unauthorized and fraudulent tuition scholarship to be set
up for the spouse of a GWU employee and NGM consultant.

Bedewi stipulated that the losses from his criminal activity
totaled $991,909.31, including $797,784 that DOT paid in
reimbursements to NCAC, and $194,125.31 paid by NCAC.  He entered
into the plea agreement under Rule 11(c)(1)(C), agreeing to a
Sentencing Guidelines calculation[1] that resulted in a sentencing
range of 37 to 46 months in prison.  (See Plea Agreement ¶¶ 2-3.)
On June 29, 2005, Bedewi was sentenced to serve 38 months in
prison and three years on supervised release, perform 50 hours of
community service, and pay restitution in the amount of
$872,220.99 and a $100 special assessment.

Bedewi did not seek direct appellate review of either his
guilty plea or his sentence.  Instead, he filed the instant *pro*

---

[1]  The parties agreed to a total offense level of 24,
derived from a base offense level of 6, a 14-point enhancement
under § 2B1.1(b)(1) for a loss of more than $400,000; a 2-point
enhancement under § 3B1.1(c) for Bedewi's role as organizer and
leader; and a 2-point enhancement under § 3B1.3 for abusing a
position of trust.  (See Plea Agreement ¶ 3.)

- 4 -

*se* § 2255 motion[2] on October 31, 2005, which the government

opposes.  He then filed a motion for leave to conduct discovery

under Rule 6 of the Rules Governing Section 2255 Proceedings.

## DISCUSSION

Section 2255 authorizes "[a] prisoner in custody . . .

claiming the right to be released" to move the sentencing court

to "vacate, set aside or correct" a defendant's sentence if the

sentence was "imposed in violation of the Constitution or laws of

the United States, or that the court was without jurisdiction to

impose such sentence, or that the sentence was in excess of the

maximum authorized by law, or is otherwise subject to collateral

attack[.]"  28 U.S.C. § 2255.  "[T]he petitioner seeking to

vacate his sentence shoulders the burden of sustaining his

contentions by a preponderance of the evidence."  Winchester v.

United States, 477 F. Supp. 2d 81, 83 (D.D.C. 2007) (citing

United States v. Simpson, 475 F.2d 934, 935 (D.C. Cir. 1973)).

Specifically, he "must show 'a fundamental defect, which

inherently results in a complete miscarriage of justice' or 'an

omission inconsistent with the rudimentary demands of fair

procedure.'"  United States v. Weaver, 112 F. Supp. 2d 1, 6

---

[2]  Bedewi originally filed his motion as a "Part 18 Rule 35
Motion for Correction or Reduction of Sentence[,]" but he later
requested and was granted permission to have the motion
recharacterized as a § 2255 motion.  (See February 1, 2008
Order.)

- 5 -

(D.D.C. 2000) (quoting <u>Hill v. United States</u>, 368 U.S. 424, 428 (1962)).

"Because of the premium placed on the finality of judgments, there are limited circumstances under which a court should grant a Section 2255 motion.  Collateral attack is not appropriate where a prisoner had the opportunity to raise his objections to his conviction and sentence . . . on direct appeal and failed to do so."  <u>United States v. Wilson</u>, Criminal Action No. 96-319-01 (CKK), 2005 U.S. Dist. LEXIS 20113, at *9-10 (D.D.C. Sept. 12, 2005) (citing <u>United States v. Frady</u>, 456 U.S. 152, 165 (1982)).  Accordingly, "[w]hen a petitioner fails to raise an argument on direct appeal, he may raise his claim collaterally (that is, pursuant to § 2255) only if he can show cause and prejudice."  <u>Winchester</u>, 477 F. Supp. 2d at 84 (citing <u>Massaro v. United States</u>, 538 U.S. 500, 504 (2003)).  "To show cause and prejudice for the procedural default, the petitioner must (1) demonstrate good cause for his failure to raise the issue on appeal,[3] and (2) show that the issue he is raising caused actual prejudice."  <u>Winchester</u>, 477 F. Supp. 2d at 84 (citing <u>Bousley v. United States</u>, 523 U.S. 614, 622 (1998); <u>United States v. Kleinbart</u>, 27 F.3d 586, 590 (D.C. Cir. 1994)).

---

[3] The "cause and prejudice" standard applies whether a defendant has failed to raise a particular claim on appeal or has failed to appeal at all.  <u>See, e.g.</u>, <u>Winchester</u>, 477 F. Supp. 2d at 84 (applying the standard to a petitioner's § 2255 motion where petitioner did not previously appeal his sentence).

- 6 -

I.   RESTITUTION

Bedewi claims that the restitution portion of his sentence should be reduced because of the government's alleged breach of the plea agreement.  (See Petr.'s Mot. for Correction or Reduction of Sentence ("Petr.'s Mot.") at 2 ("While the Plea Agreement explicitly implied that . . . the restitution would be paid to DOT and the balance to GWU, the prosecutor requested from the sentencing court to make the entire amount payable to GWU. Given that this was not agreed upon in the plea agreement, it is the petitioner's opinion that this is in violation of the plea agreement.").)  This claim could have been raised on direct appeal, and Bedewi wholly fails to show cause -- let alone good cause -- for his failure to raise this issue on appeal.  As a result, this claim is procedurally barred.

In his reply brief, Bedewi appears to concede that his claim regarding the restitution is procedurally barred, and instead argues that his restitution amount should be reduced because after he was sentenced, GWU received more funds from third parties (who had received a portion of the criminal proceeds) than were originally accounted for at the sentencing hearing. Bedewi insists that his "knowledge of this information came months after the sentencing hearing and therefore well outside the allowable period for appeal[.]"  (Petr.'s Reply ¶ 4.)  The timing of Bedewi becoming aware of this information is of little

- 7 -

import, however.  The text of § 2255 in the main provides a
method for prisoners to challenge collaterally the legality of
their custody and to seek release, not to challenge the
restitution order.  Indeed, although the D.C. Circuit does not
appear to have addressed the issue, "[n]early every circuit to
consider the issue has concluded that an order of restitution may
be not attacked in a § 2255 petition[.]"  Kaminski v. United
States, 339 F.3d 84, 88 (2d Cir. 2003); see also United States v.
Bernard, 351 F.3d 360, 361 (8th Cir. 2003) (collecting cases)
(holding that "a federal prisoner cannot challenge the
restitution portion of his sentence using 28 U.S.C. § 2255");
Townsend v. United States, Criminal Action No. 88-254-03 (TFH),
2000 U.S. Dist. LEXIS 12705, at *14 (D.D.C. Aug. 28, 2000)
(collecting cases).  Even if a challenge to a restitution order
were appropriate under § 2255, Bedewi has shown neither a
fundamental defect in the imposition of the order nor good cause
for his failure to challenge the order by direct appeal.

II.  GUIDELINES CALCULATION

    Bedewi claims that his sentence was imposed using a
guidelines range inapplicable to his conviction.  (See Petr.'s
Mot. at 2-3).  Specifically, he contends that the loss
calculation utilized in the plea agreement and ultimately adopted
at sentencing was the gain to himself, which U.S.S.G. § 2B1.1
directs is to be used only if the victim's loss cannot be

- 8 -

accurately determined.  <u>See</u> U.S.S.G. § 2B1.1(b)(1), cmt. n.3(B)
(2004) ("The court shall use the gain that resulted from the
offense as an alternative measure of loss only if there is a loss
but it reasonably cannot be determined.").

This claim fails for several reasons.  Bedewi could have
raised the claim on direct appeal, and he again does not show any
cause for his failure to do so.  As a result, the claim is
procedurally barred.  Bedewi's claim also fails on the merits
because he agreed in the binding plea agreement which he signed
and reaffirmed during his plea colloquy "that a sentencing range
of 37 to 46 months . . . is the appropriate sentence for the
offense to which [he] is pleading guilty."  (Plea Agreement ¶ 4.)
Even if a different loss calculation was warranted and would have
yielded a different sentencing range, the law in this circuit is
that Rule 11(c)(1)(C) "countenances agreed-upon sentences falling
outside of the otherwise applicable Guidelines range[,]" <u>United
States v. Goodall</u>, 236 F.3d 700, 705 (D.C. Cir. 2001), and
"[o]nce parties reach a binding plea agreement specifying that a
specific sentencing range is the appropriate disposition of the
case, the court is bound by the plea agreement after it accepts
it."  <u>Winchester</u>, 477 F. Supp. 2d at 85 (citing Fed. R. Crim. P.
11(c)(1)(C) and <u>United States v. Heard</u>, 359 F.3d 544, 548 (D.C.
Cir. 2004)); <u>see also</u> <u>Nelson v. United States</u>, 406 F. Supp. 2d
73, 76 n.1 (D.D.C. 2005).  Moreover, where, as here, a petitioner

agrees in a plea agreement to a particular sentence, he fails to demonstrate the requisite prejudice if he received a sentence consistent with the terms of the plea agreement.  See Winchester, 477 F. Supp. 2d at 86 ("As the petitioner here agreed that 144 months was an appropriate sentence, he fails to demonstrate prejudice."); Molina v. United States, Civil No. 04-1828, 2006 WL 1997384, at *3 (D.P.R. July 14, 2006) (finding that "petitioner has failed to demonstrate a specific showing of prejudice" where he was sentenced consistent with the terms of a plea agreement).[4]

Bedewi appears to concede these points in his reply brief, and instead argues that his term of incarceration should be reduced because GWU received more funds -- after Bedewi was sentenced -- from third parties than were originally accounted for at the sentencing hearing.  He insists that he learned this information months after the sentencing hearing, and that if the

---

[4]  Bedewi notes that he agreed to the Guidelines range calculation reflected in the plea agreement, in part, because of his reliance on the erroneous advice of his counsel.  (See Petr.'s Mot. at 2.)  While "ineffective assistance of counsel may demonstrate cause and prejudice," Cassell v. United States, Criminal Action No. 00-270 (RMU), 2006 WL 2051371, at *4 n.2 (D.D.C. July 19, 2006), Bedewi does not contend that his counsel's alleged ineffective assistance was the cause for his failure to raise his claims regarding the sentencing range calculation on direct appeal.  Furthermore, although "the claim of ineffective assistance is not itself forfeited if not raised during appeal[,]" id., Bedewi's allegations do not amount to an ineffective assistance claim because he does not allege that "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  United States v. Streater, 70 F.3d 1314, 1318 (D.C. Cir. 1995).

- 10 -

adjusted loss to GWU were taken into account, his sentencing range would be 18 to 24 months, rather than 37 to 46 months. (See Petr.'s Reply at 2.)  Again, Bedewi's argument is unavailing because whether GWU was compensated by third parties after sentencing does not render the sentence itself illegal.  See, e.g., United States v. Fisher, 150 F. App'x 860, 862 (10th Cir. 2005) (affirming a district court's denial of petitioner's § 2255 motion by explaining that "the fact that a victim has recovered part of its loss after discovery of a fraud does not diminish a defendant's culpability for purposes of sentencing" (internal quotations and citation omitted)).

III. REQUEST FOR LENIENCY

Bedewi urges that his sentence should be reduced in light of the great hardship that his incarceration and restitution have caused his family, and because of the more lenient guidelines that were previously applicable to his offense.  (See Petr.'s Mot. at 3.)  Under § 2255, however, a court may vacate, set aside, or correct a sentence only "if it determines that the sentence was illegal."  United States v. Hughes, Criminal Action No. 04-445 (CKK), 2006 WL 2092634, at *5 (D.D.C. July 27, 2006) (citing United States v. Addonizio, 442 U.S. 178, 185 (1979)). In other words, "[a] petitioner can collaterally attack his sentence under section 2255 where the sentencing judge made an 'objectively ascertainable error.'"  Id. (quoting Baylor v.

- 11 -

<u>United States</u>, 314 F. Supp. 2d 47, 50 (D.D.C. 2004)).  Bedewi's
requests for leniency are in no way challenges to the legality of
his sentence, nor do they entail any claim of error.  They
therefore are not cognizable under § 2255.[5]  <u>See, e.g.</u>, <u>United
States v. Silva</u>, 76 F.3d 390, 1996 WL 30270, at *2 (9th Cir.
1996) (unpublished table opinion) (stating that "a plea for
leniency based on factors other than those contemplated by
section 2255 . . . is not cognizable under section 2255"); <u>United
States v. Somers</u>, 552 F.2d 108, 114 (3d Cir. 1977) (explaining
that a post-sentencing plea for leniency based on family hardship
is not a proper grounds for a § 2255 proceeding); <u>Hughes</u>, 2006 WL
2092634, at *5 (finding that a petitioner's plea for leniency
based on family hardship "is outside the scope of Section 2255");
<u>Williams v. United States</u>, No. 3:07-1038, 2008 WL 2704423, at *2
(M.D. Tenn. July 3, 2008) (holding that "section 2255 is
inapplicable" to a petitioner's plea for leniency based on the
"severe [h]ardship, due to the current health crisis in his
immediate [f]amily"); <u>Hamilton v. United States</u>, No. 06-CR-179,
2008 WL 189933, at *3 (N.D.N.Y. Jan. 18, 2008) (same).

IV.   RULE 6 MOTION FOR DISCOVERY

Finally, Bedewi has also moved under Rule 6 of the Rules
Governing Section 2255 Proceedings for leave to seek discovery

---

    [5]  Moreover, Bedewi's family circumstances were among the
factors considered at sentencing.

- 12 -

from the government to support his § 2255 motion.[6]  Rule 6(a)
instructs that a district court may authorize a party to conduct
discovery upon a showing of "good cause," and good cause exists
"'where specific allegations before the court show reason to
believe that the petitioner may, if facts are fully developed, be
able to demonstrate that he is . . . entitled to relief[.]'"
Bracy v. Gramley, 520 U.S. 899, 908-09 (1997) (quoting Harris v.
Nelson, 394 U.S. 286, 300 (1969)).  None of the reasons provided
by Bedewi in his Rule 6 motion constitutes such good cause.

Bedewi insists that discovery is necessary to obtain
information regarding the "true loss" to GWU.  Again, Bedewi
appears to rely on what GWU later received from "other parties
which counts against the defendant's restitution[,]" and the fact
that "[t]he 'loss calculation' derived by the Government was
based on the gain to the defendant" as the primary bases for his
request.  (See Petr.'s Mot. for Leave to Conduct Discovery
("Petr.'s Discovery Mot."), Ex. B (First Request for Admissions)
¶¶ 9-10.)  As is discussed above, neither subsequent payments to
GWU by third parties nor the loss calculation utilized
constitutes grounds for granting petitioner's § 2255 motion.

---

[6]  He also originally asked to seek similar discovery from
GWU, but later withdrew that request in his reply brief in
support of his § 2255 motion.  (See Petr.'s Reply ¶ 6
("Petitioner . . . requests that the discovery be served upon the
Government only.").)

- 13 -

Thus, discovery on these issues is unnecessary and they do not provide good cause.

Bedewi's discovery motion includes allegations that there were "widespread accounting improprieties in the university's research grants and contracts, some of which are illegal and fraudulent, and which would have resulted in a university[-]wide federal investigation." (Petr.'s Discovery Mot. at 5.)  Even if these allegations were true, Bedewi fails to explain how such improprieties would alter his own culpability, and this failure renders discovery on such allegations similarly unnecessary and unwarranted.

Bedewi insists that discovery would reveal that GWU knew of his "activities" with NGM and ITSC, and therefore he could not have been acting in a "'position of trust' as defined in the sentencing guidelines." (Id.)  Even assuming that GWU did know of some of his activities with these companies, Bedewi fails to explain how such knowledge would negate his status as one in a position of trust as defined by § 3B1.3 of the Sentencing

- 14 -

Guidelines.[7]  He therefore fails to provide good cause for his
discovery request on the issue.

Finally, Bedewi seeks discovery to show that "he was not the
Director [of NCAC]" during the entirety of the government's
investigation of his criminal activity.  (Id.)  Bedewi again
fails to provide good cause for his request, since even if there
was a period in which he was not the Director, he does not deny
that he held the position of Principal Investigator during the
relevant timeframe or deny engaging in the offense.  Bedewi gives
simply no explanation for how such discovery could alter the
outcome of his § 2255 proceedings.  Accordingly, Bedewi's Rule 6
motion will be denied for lack of good cause shown.

CONCLUSION

GWU's receipt of compensation after Bedewi's sentencing does
not undermine the legality of the restitution order.  Because (1)
Bedewi fails to show good cause for not raising his challenges to
the restitution order and guidelines calculations by pursuing a
direct appeal, (2) a § 2255 motion here is inappropriate to

---

[7]  "[T]rust refers to a position of . . . trust
characterized by professional or managerial discretion (i.e.,
substantial discretionary judgment that is ordinarily given
considerable deference).  Persons holding such positions
ordinarily are subject to significantly less supervision than
employees whose responsibilities are primarily non-discretionary
in nature. . . .  [T]he position of . . . trust must have
contributed in some significant way to facilitating the
commission or concealment of the offense (e.g., by making the
detection of the offense or the defendant's responsibility for
the offense more difficult)."  U.S.S.G. § 3B1.3 application n.1.

- 15 -

challenge his restitution order, (3) he agreed to the sentencing guidelines calculations in his binding Rule 11(c)(1)(C) plea agreement, and (4) his plea for leniency is not a ground for relief under § 2255, Bedewi's § 2255 motion will be denied. Bedewi's discovery motion will be denied for failure to show good cause for the discovery requested.

An appropriate Order accompanies this Memorandum Opinion.

SIGNED this 15th day of October, 2008.

_____
RICHARD W. ROBERTS
United States District Judge